KAREN P. HEWITT
United States Attorney
CAROLINE P. HAN
Assistant U.S. Attorney
California State Bar No. 250301
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-5220
Fax: (619) 235-2757
E-mail: caroline.han@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 08CR1193-1-DMS |
|---|---|---|
| Plaintiff, | ) ) ) | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. | ) ) | **(1) TO MODIFY BAIL CONDITIONS** |
| RICARDO PALMER (1), | ) ) ) | |
| Defendant. | ) ) ) ) | Date:   May 8, 2008<br>Time:   9:00 a.m.<br>Court:  The Hon. Ruben B. Brooks |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Caroline P. Han, and hereby files its Response and Opposition to Defendant's Motion to Modify Bail Conditions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Fact and Memorandum of Points and Authorities.

/ /

/ /

/ /

/ /

Case No. 08CR1193-1-DMS

**I**

**STATEMENT OF FACTS**

**A.    Defendant's Arrest**

On April 4, 2008, defendant Robert Palmer attempted to enter the United States as the driver of a 1989 Mercedes 300 SEL vehicle with California license plate XXXXI. In addition, to the defendant, co-defendants Janeen Ochoa and Annabelle Moraira were passengers in the vehicle. The defendant provided identification for himself, and claimed to be a United States Citizen. In addition, the defendant also provided a negative customs declaration to the Customs and Border Protection (CBP) Inspector during primary inspection. The defendant, his co-defendants, and the vehicle were all referred to secondary inspection based upon a computer generated referral.

During secondary inspection, CBP inspectors found one female, later identified as material witness Ana Vega -Juarez, concealed in a non-factory compartment behind the rear seat of the vehicle. The compartment had been built in the space that would have accommodated the vehicle's gas tank and an alternate fuel source had been created in the vehicle. The woman could not extricate herself from the vehicle, and CBP inspectors helped her get out of the car. Thereafter, the defendant, his co-defendants, and the material witness were all taken into custody.

Defendant was advised of his Miranda rights and he agreed to waive those rights. The defendant stated that while he was eating in Mexico, a man had approached him and offered him $1,200.00 to drive a car to a location in San Diego. However, the defendant denied knowledge that the material witness was concealed within the vehicle. He also admitted to having been previously arrested on February 28, 2008 for a violation of 8 U.S.C. 1324 when he was apprehended driving a vehicle in which there were eleven illegal aliens who were concealing themselves in the back of the vehicle.

**B.    Defendant's Initial Appearance**

The defendant's initial appearance occurred on April 7, 2008. Federal Defenders of San Diego, Inc was appointed to represented the defendant. The United States' bail recommendation for the defendant was a $30,000 cash or corporate surety bond in light of the facts presented before the parties in the instant case and the risk of flight presented by the defendant. The Court declined to set bail at the

amount requested by the United States, and set bail at a $20,000 personal appearance bond to be cosigned by two financially responsible people who are also related to the defendant. (Gov't Ex. 1, p. 14). The order specifically states that the Court has found that an "unconditional release pursuant to 18 U.S.C. § 3142(b)" is insufficient to secure the defendant's appearance and the safety of the community, and that conditions of pre-trial release are necessary. Id.

### C.  **Defendant's Submitted Bond Packet**

The bond packet that the defendant submitted to the U.S. Attorney's Office contained an Advice of Penalties and Sanctions form signed by the defendant, a bail information sheet for the defendant, an appearance bond signed by Margarita and Michael Palmer, and surety addendums signed by Margarita and Michael Palmer and which contained the sureties' basic biographical information and employment information. In addition, both Margarita and Michael Palmer signed the surety addendums and declared under penalty of perjury that their net worth "is the sum of $ [sic] at least $20,000. [Gov't Ex. 1, p. 4-5] In support of the submitted forms, the defendant also submitted a copy of Margarita Palmer's identification card, Lawful Permanent Resident card, social security Card, her last two pay stubs, and her work identification card. For Michael Palmer, the defendant submitted Michael Palmer's driver's license, social security card, and his last two pay stubs.

On April 22, 2008 AUSA Michelle Pettit declined to approve the bond packet as submitted because the bond packet did not demonstrate that both Margarita and Michael Palmer individually have a net worth of $20,000 as they initially averred in the surety addendum and as required by 18 U.S.C. § 3142.

On April 24, 2008, the defendant made an oral motion to modify his bail conditions in accordance with the sureties' salaries. The Court denied the motion without prejudice. On April 28, 2008, the defendant filed a written motion to modify his bail conditions. The Court ordered the United States to reply by May 6, 2008.

//

//

**II**

**THE SUBMITTED BOND PACKET DOES NOT SATISFY
THE REQUIREMENTS SET FORTH IN 18 U.S.C. § 3142**

The defendant has submitted a bond packet, and urges the Court to approve the packet by arguing that the bond packet is in compliance with the conditions set forth by the Court's order and the requirements set forth in 18 U.S.C. § 3142. 18 U.S.C. § 3142(a) provides a court with three options when a person charged with an offense appears before it, namely, (1) releasing the defendant on his own recognizance or upon an unsecured appearance bond in accordance with 18 U.S.C. § 3142(b); (2) releasing the defendant "on a condition or combination of conditions in accordance with subsection c of 18 U.S.C. § 3142; or (3) detaining a defendant. 18 U.S.C. § 3142.

The three options work as alternatives to each other. That is, subsection c of 18 U.S.C. § 3142 provides that where a finding has been made that releasing the defendant on his own recognizance or upon an unsecured appearance bond would not "reasonably assure" the defendant's appearance as required, then the judicial officer should order the pretrial release of the defendant subject to the "least restrictive" condition or combination of conditions that would "reasonably assure" the appearance of the defendant. 18 U.S.C. § 3142(c)(B). The statute continues with a list of conditions that a court may impose. Among the conditions listed is the condition set forth in 18 U.S.C. § 3142(c)(B)(xii) is the condition that the defendant "execute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person [defendant] as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond." 18 U.S.C. § 3142(c)(B)(xii). In addition, Rule 46 of the Federal Rules of Criminal Procedure also includes guidance on sureties. It states that "every surety except a legally approved corporate surety, **must** (emphasis added) demonstrate by affidavit that its assets are adequate." F.R.Cr.P. 46(e); see also United States v. Melville, 309 F. Supp. 824, 828 (2nd Cir. 1970) (holding that Rule 46(e) "does not define the scope of the Court's discretion in determining the validity of the moral and financial

1  purposes and intended use of the bail," but instead requires all sureties to justify their proposed
2  method for meeting the obligation).

3      In this case, when this Court set bail, inherent in the setting of the bail and the other
4  conditions as set forth by the Court both in the bail hearing and in the Court's order was that these
5  conditions were the least restrictive combination of conditions that would reasonably assure the
6  defendant's appearance. In addition, the Court's order acknowledges that it is in compliance with 18
7  U.S.C. § 3142(c)(2) which prohibits a court from imposing a financial condition that results in the
8  pretrial detention of the defendant. 18 U.S.C. § 3142(c)(2).

9      The defendant argues that the Court did not impose the requirements set forth in 18 U.S.C. §
10  3142(c)(B)(xii), has not done so in the past, and should not do so. However, in ordering the
11  defendant to execute a personal appearance bond that was secured by the signatures of the two
12  financially responsible and related adults, the Court's order triggered both 18 U.S.C. §
13  3142(c)(B)(xii) and Rule 46 of the Federal Rules of Criminal Procedure. While the Court's order
14  did not specifically state that the sureties were required to be solvent, it defies logic that the Court
15  would find that the defendant's case was not apt for an unsecured appearance bond in accordance
16  with 18 U.S.C. § 3142(a)(1), but that his appearance could be secured by two people who were not
17  solvent and could thus not be held liable for the amount of the personal appearance bond. This is
18  because the finding that the defendant's appearance could not be secured by an unsecured bond
19  required the Court to find that the defendant's appearance needed to be secured in some way, and
20  that manner was by imposing the conditions imposed by the Court.

21      The defendant objects to the imposition of the requirement that the sureties demonstrate that
22  they have sufficient assets to pay the amount of the bond. In so doing, the defendant argues that the
23  Court has a choice to impose the requirement. However, upon determining that sureties are
24  required, the Court no long has a choice to impose the requirement. The Ninth Circuit has held that
25  sureties must have sufficient assets to pay the bond amount in compliance with the statute. United
26  States v. Figuerola, 58 F.3d 502, 504 (9th Cir. 1995) (acknowledging that 18 U.S.C. § 3142 requires
27  that "each surety have sufficient assets to pay the amount of the bond."). Moreover, the Ninth
28  Circuit has found that "[T]here can be no doubt that the bail statute provides that a 'surety shall have

5     Case No. 08CR1193-1-DMS

a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond.'"
United States v. Bertha Noriega-Sarabia, 116 F.3d 417, 419 (9th Cir. 1997) (citing 18 U.S.C. § 3142).
In Noriega-Sarabia, the court noted that it is risky to approve a bond where a surety has not sworn to his or her own net worth, or when a surety's net worth is insufficient to cover the whole amount of the bond. The Court further noted that the risk is to those who are expecting the defendant to appear – the court, the government, and the public. Id. at 420. In discussing this risk, the court acknowledged the Fifth Circuit's view that "the case law makes clear that sureties must reveal their property sources so that the government can be assured of their financial ability and so that the court can be satisfied that the they have an incentive and purpose to secure the defendant's presence at trial." Id. (citing United States v. Skipper, 633 F.2d 1177, 1180 (5th Cir. 1981)).

In the instant case, once the Court determined that the defendant's presence had to be secured by an appearance bond that was to be cosigned, the Court required the sureties to actually demonstrate that they had the "incentive and purpose" to assure that the defendant was to appear in court. Otherwise, there would be no need for them to cosign the defendant's personal appearance bond. More specifically, it means that the promise that Margarita and Michael Palmer are making is that they can assure the Court that the defendant will appear in court. If he does not, they will face the consequences of the defendant not appearing in court. In this case, the consequences are that each surety will be held jointly and severally liable for the $20,000 should the defendant not appear in court. For the sureties' assurances to have any meaning, the sureties must be able to be bound by the promise which in this case, requires them to actually be held liable for the $20,000.

This is not to be confused with an argument that the United States must be able to collect on the $20,000 should the defendant fail to appear. The United States is not taking that position, and instead urges the Court to find that a promise by the sureties cannot mean anything if there are no consequences to failing to meet the requirements of the promise. Both sureties swore under penalty under perjury that their net worth was $20,000 in the original bond packet as submitted to the U.S. Attorney's Office. In fact, neither surety demonstrated a net worth of $20,000 in the original bond packet based upon the documents and affidavits that each of them provided as discussed above. (Gov't Ex. 1, p.4-5) Since then, Michael Palmer has submitted his E-file signature authorization for

1 his 2007 income tax return which states that his adjusted gross income was $27,798.00. (Def. Ex. A,
2 p. 12). In addition, he has submitted a car registration document which demonstrates that he has a
3 vehicle which is registered to him and for which the lienholder is the North Island Federal Credit
4 Union. (Def. Ex. A, p. 13). Margarita Palmer also submitted her E-file signature authorization for
5 her 2007 income tax return which states that her adjusted gross income was $17,747.00 (Def. Ex. A.,
6 p.18). Again, none of the documents demonstrate that either one of the sureties have a net worth of
7 $20,000. While the possibility remains that in the future, the sureties could amass a net worth of
8 $20,000 each such that the United States could collect should the defendant fail to appear, the Ninth
9 Circuit has declined to adopt the position that "possible future income complies with the net worth
10 requirement." Noriega-Sarabia at 420.

11 Moreover, the burden is on the sureties to demonstrate to the Court that they have the net
12 worth of $20,000 such that their assurance to the court. The burden on them is more than just a
13 burden of producing documents. In fact, the burden is of demonstrating to the Court that they
14 understand the obligation to which they have committed by virtue of their signatures on the
15 proposed bond packet, and that in fact their obligation means something. This is because a "bail
16 bond is a contract between the sureties and the Government." United States v. Gonware, 415 F.2d
17 82, 83 (9th Cir. 1969) (citing Heine v. United States, 135 F.2d 914, 917 (6th Cir. 1943). In addition,
18 "[L]ike any other contract, a bail bond should be construed to give effect to the reasonable intentions
19 of the parties." Id. (citing Palermo v. United States, 61 F.2d 138, 142 (8th Cir. 1932). As a result of
20 the fact that neither surety has a sufficient net worth to meet the bail requirements, applying basic
21 contract principles, the sureties have failed to provide any consideration for the defendant's release
22 other than their word. Their intentions thus seem clear – that there be no consequences to the
23 failure to comply with the Court's order. This is because should the defendant fail to appear, neither
24 surety would face any consequences should their circumstances remain the same. That is, should
25 they continue to work their jobs at the hotel and car dealership, earning similar wages that by most
26 people's account, are insufficient to reside in the Southern District of California and still have
27 money left over, they will never have to concern themselves with the failure to comply with the
28 promise that they made to the Court. The United States does not believe that the sureties themselves

1  are flippant about their responsibility. Instead, it is clear that they act out of a desire to see the
2  defendant, a loved one, out of custody. However, they cannot be taken at their word alone because
3  18 U.S.C. 3142 and Rule 46(e) require the sureties to demonstrate their net worth,imes and since the
4  Court has determined that one of the defendant's bail conditions is that he have sureties to cosign his
5  bond, they must comply with requirements as set forth in the statute and rule.
6      For these reasons, the Court must impose the requirements of the statute and rule, and find
7  that the proposed bond package is insufficient to meet with the requirements of 18 U.S.C. 3142 and
8  Rule 46(e).

## III

### DEFENDANT'S MOTION TO MODIFY THE BAIL CONDITIONS

11     In lieu of approving the defendant's bond package as submitted, the defendant has moved the
12 Court to modify his bail conditions. The defendant has argued that should the Court find that it must
13 impose the conditions set forth in 18 U.S.C. § 3142(c)(B)(xii) and Rule 46 of the Federal Rules of
14 Criminal Procedure, conditions with which the defendant's proposed sureties cannot comply, then
15 the Court should modify the conditions. Essentially, the defendant has made a motion for
16 reconsideration of the Court's decision. Because this court issued its order (Gov't Ex 1, p. 14)
17 pursuant to 18 U.S.C. § 3142©, the defendant can appeal the Court's order by filing a motion with
18 the district court or directly to the Court of Appeals. United States v. Fidler, 419 F.3d 1026, 1028
19 (9th Cir. 2005). As discussed above, the defendant has not done so and has made his motion before
20 this Court.
21     The purpose of the imposition of bail conditions is to reasonably assure that the defendant
22 will appear in court. 18 U.S.C. § 3142(c). As such, it cannot be that a court would be expected to
23 routinely set bail at an amount that the defendant, regardless of who he is or what his circumstances
24 are, would be certain to be able to meet. As discussed above, while the defendant may not be able to
25 meet the conditions set forth by the Court, this in itself is not a reason to modify the conditions of
26 the defendant's bail. The defendant has cited 18 U.S.C. § 3142(c)(2) which precludes a judicial
27 officer from imposing financial conditions such that a defendant results in pre-trial detention.
28 However, "[I]t cannot be said that in every case bail must be set at an amount which the defendant

1  can raise." <u>Melville</u> at 828. Moreover, defendant misinterprets the provision because the provision's
2  intent was to "prevent the practice of 'de facto preventative detention' where a judge could in effect
3  issue a detention order without a proper finding...by granting bail but setting an exorbitant financial
4  condition that the defendant could not meet." <u>Fidler</u> at 1028 (citing <u>United States</u> v. <u>Westbrook</u>, 780
5  F.2d 1185, 1187 n.3 (5th Cir. 1986)). In <u>Fidler</u>, the Ninth Circuit explained that bail determinations
6  did not violate 18 U.S.C. § 3142(c)(2) where a court had made a determination that the "amount of
7  bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the
8  community, and not based upon the "defendant's inability to meet the financial condition" <u>Id.</u> In the
9  instant case, the Court was presented with a 22 year old defendant who was the driver of a vehicle
10 which applied for entry into the United States at the San Ysidro Port of Entry and in which an alien
11 was found concealed in a non-factory compartment with an alternative fuel source. The defendant
12 admitted to being recruited to drive the vehicle across the border to a location in San Diego in
13 exchange for $1,200.00. Based upon that information, the Court found that there was probable cause
14 to existed in the defendant's case. In addition, the Court was also presented with a defendant whose
15 residence address was in Phoenix, Arizona, and who had been administratively processed for alien
16 smuggling approximately five weeks prior. In addition, the Pretrial Services report noted that the
17 defendant had prior law enforcement contacts. Based upon the information presented, the Court
18 made a bail determination and there is no evidence that in setting the bail, that the Court was seeking
19 to set the bail at such a high amount that the defendant would be defacto detained. The fact that the
20 defendant like many other defendants, has not yet been able to meet the requirements of the Court's
21 order should not influence the Court's decision, particularly in light of the Court's fair evaluation of
22 //
23 //
24 //
25 //
26 //
27 //
28 //

the facts as presented at the defendant's initial appearance. As such, the Court's order does not violate 18 U.S.C. § 3142(c)(2) and should not be modified at the defendant's will.

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Court deny Defendant's motions.

DATED: May 6, 2008

                                        Respectfully submitted,

                                        KAREN P. HEWITT
                                        United States Attorney

                                        /s/ *Caroline P. Han*
                                        CAROLINE P. HAN
                                        Assistant United States Attorney
                                        Attorneys for Plaintiff
                                        United States of America

UNITED STATES MAGISTRATE COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1193-1-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| RICARDO PALMER, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, CAROLINE P. HAN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** to **DEFENDANT'S MOTION TO MODIFY BAIL CONDITIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michelle Betancourt

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2008.

/s/ *Caroline P. Han*

CAROLINE P. HAN

Assistant United States Attorney